869 So.2d 695 (2004)
Wendy Leader IACONETTI, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-4214.
District Court of Appeal of Florida, Second District.
April 2, 2004.
*696 James Marion Moorman, Public Defender, and William L. Sharwell, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Susan M. Shanahan, Assistant *697 Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Wendy Leader Iaconetti challenges the trial court's orders denying her motion to withdraw her plea and denying her motion to correct sentencing error which alleged that the restitution order was improperly entered. Because the trial court failed to hold an evidentiary hearing on the motion to withdraw and failed to appoint conflict-free counsel to represent Iaconetti at such a hearing, we reverse and remand for a new hearing. In addition, because the trial court failed to hold a hearing on the issue of restitution, we reverse the restitution order and remand for further proceedings on that issue as well.
On November 1, 2000, in case number 00-13804, the State charged Iaconetti with four counts of fraudulent use of a credit card and one count of grand theft. Iaconetti entered a negotiated plea in exchange for a sentence of thirty-six months' probation, $13,362.63 in restitution, and $261 in court costs. In August 2002, the Department of Corrections filed an affidavit of violation of probation, which alleged numerous violations of several conditions of probation. In addition, the State filed a new information against Iaconetti in case number 02-9172, charging her with six counts of third-degree grand theft, two counts of first-degree grand theft, and eight counts of uttering a forged instrument.
At a change of plea hearing on August 27, 2002, Iaconetti admitted the violations of probation in case number 00-13804 and entered a best interest guilty plea in case number 02-9172. During the plea colloquy, Iaconetti stated that she understood she was admitting the violations of probation and pleading as charged to the new charges. Iaconetti said she understood she had a right to a trial and acknowledged giving up any defenses and the right to call witnesses. She told the trial court that she was not under the influence of drugs or alcohol that affected her ability to understand the proceedings in court. She acknowledged that she had signed the waiver of rights form and told the court that she was entering the admissions and plea freely and voluntarily. The trial court accepted the plea and admission and adjudicated Iaconetti guilty.
When the trial court moved on to sentencing, the court remarked, "She's being sentenced to the bottom of the guidelines?" Defense counsel then responded that it was an open plea. Looking at the plea form, the trial court expressed concern that defense counsel had indicated a negotiated sentence of thirteen months on the plea form when, in fact, there was none. The plea form signed by Iaconetti has an "X" indicating a negotiated sentence of thirteen months in prison, but this "X" is crossed out and another "X" indicates that Iaconetti is entering an open plea. Nothing on the plea form indicates when this alteration was made or that it was made with Iaconetti's knowledge. Defense counsel told the court that Iaconetti intended to enter an open plea, and he apologized for misleading the court. The trial court then asked Iaconetti whether she understood that there were no plea negotiations in this case. Iaconetti replied that she did. The trial court made no further efforts to determine whether Iaconetti understood the plea form or the trial court's sentencing options.
In mitigation as to the sentence, defense counsel argued that Iaconetti had a history of depression and a bad drug habit. According to defense counsel, Iaconetti's addiction caused her to take checks belonging to her employer and cash them to purchase drugs. The trial court interrupted *698 and pointed out that the information alleged that Iaconetti bought tickets for a dog show with the stolen funds, not drugs. Defense counsel then said most of the money was for drugs. Iaconetti then interrupted defense counsel and specifically denied that she had used her employer's credit card to buy tickets to a dog show in New York. Following this discussion, the trial court sentenced Iaconetti to thirty-six months in prison on the new charges and a concurrent thirty-six months on the violations of probation.
After the sentencing was concluded but before Iaconetti left the courtroom, the case was recalled. Defense counsel told the court that he had been speaking with Iaconetti and she was insisting that she never purchased plane tickets other than those for her employer. Defense counsel said that Iaconetti also denied buying admission tickets to a dog show. The court stated that the information asserted otherwise. Iaconetti then asked the court to call her employer and one of the secretaries could testify that the airline tickets to Miami were bought for the firm. The trial court refused to call Iaconetti's employer and stated that the sentence would stand.
The case was again passed and again recalled. Defense counsel then stated Iaconetti wanted to withdraw her pleas. According to defense counsel, Iaconetti was asserting that defense counsel had not fully explained to her the correlation between the new offenses and the violation of probation and that she felt that he had led her to believe she would get a bottom-of-the-guidelines sentence. Defense counsel then stated, "And I may have given her that impression." The trial court denied the oral motion to withdraw the plea but stated that counsel could file an appropriate written motion to withdraw.
On September 5, 2002, Iaconetti filed a motion through counsel entitled "Defendant's Pro Se Motion to Withdraw Plea." Iaconetti sought to withdraw her plea on the grounds that it was not knowingly and voluntarily entered. In addition, the motion alleged that the trial court had not complied with Florida Rule of Criminal Procedure 3.172 by making sure that Iaconetti understood all of the rights she was giving up by entering the plea.
On September 9, 2002, the trial court held a hearing on the motion to withdraw. The trial court announced that the motion to withdraw was filed pro se and asked if Iaconetti wanted to add anything to the motion. Iaconetti replied she had not even seen the motion and had not signed it. The trial court passed the case so Iaconetti could read the motion. When the case was recalled, the trial court stated, "This is a pro se motion, correct? She's not represented by the Public Defender's Office." Iaconetti's trial counsel, who happened to be in the courtroom, confirmed that she was not represented for this motion. The trial court then asked Iaconetti if she wanted to add anything to the motion. Iaconetti replied:
Yes, Your Honor, I would like to. On the day that I was here before you, which was August 27th and not 28th that it states in the motion, I was led to believe that I was signing a plea agreement for one year and a day. There was no words ever said to me other than a year and a day.
Defense counsel, who stated on the record that he was there only as a "friend of the Court," then explained that Iaconetti told him that she would never have pleaded guilty to the new charges because she was not guilty and that the plea was not knowingly entered because he had not explained certain things to her about her sentence. Neither Iaconetti nor defense counsel was sworn during this discussion. The State then argued that the court went *699 through a full colloquy with Iaconetti at the plea hearing and that she was now contradicting herself as to the facts. The trial court denied the motion to withdraw the plea.
Subsequently, on September 23, 2002, the trial court entered an order requiring Iaconetti to pay restitution in the amount of $2087.67 in case number 02-9172. Iaconetti then filed a motion to correct sentencing error, asserting that the trial court imposed restitution in violation of the plea agreement and without a hearing. The trial court denied the motion, stating that because Iaconetti had entered an open plea to the charges, the restitution order did not violate the plea agreement. This appeal followed.

MOTION TO WITHDRAW PLEA
Iaconetti filed her motion to withdraw her plea pursuant to Florida Rule of Criminal Procedure 3.170(l), which allows a defendant who has pleaded guilty or no contest to withdraw the plea on certain specified grounds. When such a motion is filed after sentencing, the defendant bears the burden of proving that "a manifest injustice has occurred." Snodgrass v. State, 837 So.2d 507, 508 (Fla. 4th DCA 2003) (quoting LeDuc v. State, 415 So.2d 721, 722 (Fla.1982)). Misrepresentations or mistaken advice by counsel concerning the length of the defendant's sentence can constitute such a "manifest injustice" and may be a basis for allowing a defendant to withdraw his or her plea. State v. Leroux, 689 So.2d 235, 236 (Fla.1996); Daniel v. State, 865 So.2d 661 (Fla. 2d DCA 2004); Snodgrass, 837 So.2d at 508.
Because the defendant bears the burden of proof, when a defendant files a facially sufficient motion to withdraw a plea, the trial court must either afford the defendant an evidentiary hearing or accept the defendant's allegations in the motion as true except to the extent that they are conclusively refuted by the record. Daniel, 865 So.2d at 661; Snodgrass, 837 So.2d at 508. If the trial court decides to hold an evidentiary hearing, it must appoint conflict-free counsel to represent the defendant because such a hearing constitutes a "critical stage" of the proceedings. Daniel, 865 So.2d at 661; Hampton v. State, 848 So.2d 405, 405 (Fla. 2d DCA 2003).
Here, Iaconetti alleged that she had been misled by her attorney concerning the length of her sentence. She contended that her attorney had told her that she would be sentenced to thirteen months in prison, which was the minimum guidelines sentence. The plea form provides at least some record support for this assertion. Because Iaconetti's motion was facially sufficient, the trial court was required to either hold an evidentiary hearing after appointing conflict-free counsel or accept Iaconetti's allegations as true unless conclusively refuted by the record. However, the trial court did neither.
First, while the trial court did hold a hearing on Iaconetti's motion, it did not hold an evidentiary hearing. The trial court asked both Iaconetti and her trial counsel questions during the hearing; however, neither were sworn as witnesses. Thus, no "evidence" was taken at the hearing.
Second, the trial court failed to appoint conflict-free counsel to represent Iaconetti at this hearing. It was clear at the sentencing hearing that Iaconetti had a conflict with her trial counsel. She asserted that he had misled her concerning the length of the sentence that would be imposed. Trial counsel specifically told the court that he might "have given her that impression" concerning her sentence, but he denied that he had actually misled her *700 and indicated that he had told her that she was pleading open to the court after no negotiations with the State. Thus, there was a factual dispute between Iaconetti and her counsel concerning what had occurred during a private, off-the-record consultation. In this situation, Iaconetti was entitled to the appointment of conflict-free counsel, see Padgett v. State, 743 So.2d 70, 74 (Fla. 4th DCA 1999), and it was per se reversible error for the trial court to hold a hearing on Iaconetti's motion without such counsel, Hampton, 848 So.2d at 405.
Third, contrary to the State's assertions, the record does not conclusively refute Iaconetti's allegations that she was misled concerning the length of the sentence that would be imposed. Before accepting Iaconetti's plea, the trial court did not question her concerning whether she understood the maximum sentences that could be imposed on the violation of probation. The trial court did not ask whether Iaconetti had been promised anything concerning the sentence she was to receive. It is clear from the transcript of the hearing that the trial court itself was confused by the plea form. However, the trial court's only effort to ensure that Iaconetti was not likewise confused was to ask her whether she understood that there were "no plea negotiations." This question was insufficient to determine whether Iaconetti understood that the sentence was entirely in the hands of the court given the representations by her attorney. Cf. Peloquin v. State, 858 So.2d 1213, 1214 (Fla. 4th DCA 2003) (holding that in the absence of any evidence that the court specifically inquired of the defendant whether his attorney had made any representations or promises concerning the length of the sentence, the plea colloquy was insufficient to conclusively refute the defendant's claim that his attorney had misled him as to the length of the sentence). Thus, the plea form and the plea colloquy were insufficient to conclusively refute Iaconetti's allegations. Accordingly, we remand for an evidentiary hearing on Iaconetti's motion to withdraw her plea and the appointment of conflict-free counsel for that hearing.

RESTITUTION ORDER
Iaconetti also contends that the trial court erred in denying her motion to correct a sentencing error because the restitution order was entered without a hearing and without any evidence being presented concerning the proper amount of restitution. We agree.
Section 775.089(7), Florida Statutes (2002), requires the trial court to hold a hearing before restitution is imposed to determine the amount of restitution. See also Exilorme v. State, 857 So.2d 339, 340 (Fla. 2d DCA 2003); Allen v. State, 718 So.2d 1264, 1265 (Fla. 2d DCA 1998). The defendant is entitled to notice of this hearing and an opportunity to be heard. Trice v. State, 655 So.2d 1270, 1271 (Fla. 2d DCA 1995). It is reversible error to impose restitution without notice or hearing. Exilorme, 857 So.2d at 340. It is also reversible error to impose restitution in the absence of any evidence as to the amount of restitution properly owed. S.A.S. v. State, 820 So.2d 449, 450 (Fla. 2d DCA 2002); Massie v. State, 635 So.2d 110, 111 (Fla. 2d DCA 1994).
In this case, there is absolutely nothing in the record to show that Iaconetti was provided with either notice or an opportunity to be heard before the trial court imposed restitution in case number 02-9172. While Iaconetti had agreed to a specific award of restitution in her original plea in case number 00-13804, she made no such agreement in case number 02-9172. Therefore, Iaconetti was entitled to notice and a hearing on the propriety of an award of restitution in case number 02-9172 *701 and the amount of such an award. The trial court's failure to afford such a hearing is reversible error.
Because the trial court failed to hold any hearing at all on the issue of restitution, the trial court erred in denying Iaconetti's motion to correct sentencing error. Therefore, we reverse the order imposing restitution. On remand, if Iaconetti's motion to withdraw her plea is denied, the trial court must hold a restitution hearing after proper notice at which Iaconetti must be given the opportunity to be heard. Further, the State must offer evidence of the proper amount of restitution; the allegations contained in the information are insufficient to support such an award.
Reversed and remanded for further proceedings.
WHATLEY and COVINGTON, JJ., concur.